**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Chief Judge Marcia S. Krieger**

Civil Action No. 14-CV-0421-MSK

MAURICE WILSON,

     Plaintiff,

v.

DONALD WILCOX;
KEVIN LITVAN;
PATRICK O'SHAUGHNESSY;
BRIAN NAVARETTE;
JOSEPH MORABITO;
SHAWN ROGERS;
CODY HAGANS;
DOUG CULLISON;
JOSE DELGADO;
MICHAEL TERSKA;
PAUL KLEIN;
TERESA NEHLS; and
CRAIG SWARTZ,

     Defendants.

---

## OPINION AND ORDER ON MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

---

     **THIS MATTER** comes before the Court on the Defendants' Motions to Dismiss and for

Summary Judgment (## **135**, **137**), the Plaintiff's Response (# **139**), and the Defendants' Reply

(# **140**).[1]  For the following reasons, the motions are granted, in part.

---

[1]  Defendants Wilcox, Litvan, O'Shaughnessy, Navarette, Morabito, Rogers, Hagans, Cullison, Klein, Nehls, and Swartz moved to dismiss (# **128**) the First Amended Complaint (# **108**). The First Amended Complaint was superseded by the Second Amended Complaint (# **132**), which renders the Motion to Dismiss moot. The Motions for Summary Judgment (## **135, 137**) are duplicative of each other. One is brought by all Defendants other than Defendant Terska; the second is brought only by Mr. Terska but on the same grounds as the first motion. Accordingly, these motions are addressed as a single motion.

# I.  JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

# II.  ISSUES PRESENTED

In the Second Amended Complaint (**# 132**), Mr. Wilson alleges the following causes of action, all in violation of the Eighth Amendment:

(1)  use of excessive force prior to Mr. Wilson's restraint against Defendants Wilcox, Litvan, O'Shaughnessy, Navarette, Morabito, Hagans, Cullison, Delgado, Terska, Klein, and Swartz;

(2)  use of excessive force after Mr. Wilson's restraint against Defendants Wilcox, Litvan, O'Shaughnessy, Navarette, Morabito, Hagans, Cullison, Delgado, Terska, Klein, and Swartz;

(3)  deliberate indifference to Mr. Wilson's mental health needs against all individual defendants;

(4)  indifference to medical needs against Defendants Rogers and Nehls;

(5)  creation of an environment in which excessive physical force was likely to occur against Defendants Klein and Swartz; and

(6)  creation of an environment in which medical neglect was likely to occur against Defendants Klein and Swartz.[2]

The Defendants request dismissal of various claims on various theories under Federal Rule of Civil Procedure 12(b)(6).   As to all of the arguments but one, the Court limits itself to the contents of Mr. Wilson's Second Amended Complaint, construed most favorably to him.

With regard to the defense of a bar under *Heck v. Humphrey* and a failure to exhaust

---

[2]   The Court will refer to these claims by number for ease of reading.

administrative remedies, the Defendants have styled their motion as one seeking summary judgment. This is understandable because Rule 12(d) provides that when matters outside the pleadings are presented, that the motion should be considered as one brought under Rule 56. Matters outside the pleadings have been submitted with regard to these defenses. As to those matters, the Court employs a Rule 56 standard, considering the evidence presented in the light most favorable to the non-movant, Mr. Wilson. However, the remedy is not summary judgment, but instead dismissal without prejudice.

### III.   FACTUAL BACKGROUND[3]

**A.   Events Giving Rise to Mr. Wilson's Claims**

On November 2, 2013, Plaintiff Maurice Wilson, a prisoner incarcerated at USP Florence, asked multiple times to see someone in the psychology department. He informed Defendant Kevin Litvan that he wanted to kill himself. Thereafter, Lieutenant Litvan told Mr. Wilson he had been directed to remove some property from Mr. Wilson's cell. When, Mr. Wilson did not comply with this order, Lieutenant Litvan informed Mr. Wilson that a Calculated Use of Force Team would be dispatched if he did not comply. He did not comply.

The use-of-force team consisting of Lieutenant Litvan and Defendants Wilcox, O'Shaughnessy, Navarette, Morabito, Hagans, Cullison, Delgado, and Terska, arrived and Mr. Wilson was asked to submit to hand restraints. He refused. Officer O'Shaughnessy sprayed tear gas into the cell. Lieutenant Litvan counted to 15 and demanded that Mr. Wilson submit to hand restraints. He refused. Officer O'Shaughnessy deployed another burst of tear gas into the cell. Lieutenant Litvan counted to 15 and demanded Mr. Wilson's submission. Officer

---

[3]   The Court recounts and accepts as true the well-pled facts alleged in the Second Amended Complaint (**# 132**).   *See Dudnikov v. Chalk & Vermilion Fine Arts Inc.*, 514 F.3d 1063, 1069–70 (10th Cir. 2008).

O'Shaughnessy then threw a vapor grenade into the cell through the food slot.   Lieutenant Litvan counted to 15.   Officer O'Shaughnessy deployed a second vapor grenade.   Lieutenant Litvan counted to 15.   Officer O'Shaughnessy deployed 10 pepper-ball rounds into the cell.   There was another 15-second pause.   Officer O'Shaughnessy fired another eight rounds of pepper balls followed by another 15-second count.   Officer Wilcox then jammed a battering ram through the food slot, striking Mr. Wilson.   Officer Wilcox performed this task again.   Officer O'Shaughnessy fired a few rounds of a Low Impact Foam Baton into the cell.   This was followed by more counting, more tear gas, and use of the battering ram.   Mr. Wilson consistently and repeatedly refused to submit to hand restraints.

The use-of-force team then entered the cell.   Mr. Wilson alleges that he was compliant with orders and did not fight the officers, but he was later disciplined for punching, choking, biting, and kicking the officers.   Eventually, after injuries on both sides, the team subdued him. Once he was restrained, the officers punched, kneed, dragged, yanked, and grabbed by the testicles, resulting in trauma to his head, face, and neck, as well as a number of contusions on his body.

After being subdued, Mr. Wilson was taken to the medical unit for decontamination, where Defendant Rogers purposefully failed to document all of Mr. Wilson's injuries, such as the trauma to his eyes, jaw, and head.   Mr. Wilson was placed in tight leg irons for 5.5 hours.   The next morning, Mr. Wilson asked for pain medication but received none.   Mr. Wilson unsuccessfully attempted suicide and was placed on suicide watch without any medication.   He was sent back to his cell that day.   During his time in the medical unit, he requested medical assistance from Defendant Nehls multiple times as she passed by.   Each time she refused.

## B.    Mr. Wilson's Disciplinary Hearing[4]

Officer Morabito completed an Incident Report charging Mr. Wilson with "assaulting any person" in violation of Code 224 of 28 C.F.R. § 541.3.   The report stated that Mr. Wilson repeatedly refused to comply with staff orders and, after a use-of-force team was called to his cell, he punched, choked, and elbowed officers.   Discipline Hearing Officer Carl Miedich conducted a disciplinary hearing on this charge and, based on this evidence, found Mr. Wilson guilty.   Mr. Wilson claimed that Officer Morabito's report was false and that he never assaulted anyone on November 2.   On Mr. Wilson's appeal, a BOP regional director returned Officer Miedich's decision for rehearing based on a procedural error.   On rehearing, Officer Miedich received evidence from officers, witnesses called by Mr. Wilson, staff review of video footage, and medical evaluations.   He again found Mr. Wilson guilty of assault, particularly that:

> When the use-of-force team entered Plaintiff's cell, Plaintiff punched the number 1 team member in the face.
>
> Plaintiff placed his arms beneath the number 1 staff member's helmet and choked him.
>
> Other team members had to pull Plaintiff off of the number 1 team member.
>
> Plaintiff punched, elbowed, bit, and kicked as many team members as he could until staff was able to gain control of him.
>
> During the use of force, Plaintiff knocked off a staff member's helmet and gas mask.

---

[4]   As an initial matter, Mr. Wilson argues that the Defendants' failure to properly respond to discovery requests violated Federal Rule Civil Procedure 37(c), which precludes consideration of the declaration of Discipline Hearing Officer Carl Miedich and his attached documents save for Attachment 1.   Mr. Wilson concedes that the BOP produced Attachment 1, which is an Incident Report prepared by Defendant Morabito on November 2, 2013, and delivered to Mr. Wilson on November 27, 2013.   Even assuming that the exhibits attached to the declaration were never produced, Officer Miedich still affirms with personal knowledge the facts underlying Mr. Wilson's disciplinary hearing, as he was the presiding officer of such hearing.   Mr. Wilson has not offered any basis to strike the declaration itself.

Use-of-force team members received multiple injuries during the use of force, including a possible broken finger and bruising to the head and knee areas.

Officer Morabito, the author of the incident report, was referred to a local hospital for head, arm, and neck injuries, along with bruising to his right eye area.

135-2 ¶ 20. Mr. Wilson's disciplinary conviction has never been reversed or invalidated.

## C. Exhaustion of Administrative Grievances

Based on the evidence submitted in support and opposition to the Motion, the Court finds the undisputed facts to be that Mr. Wilson filed two fully exhausted grievances: Remedy No. 757664 and Remedy No. 759141. On November 15, 2013, Mr. Wilson initiated Remedy No. 757664, generally alleging that Mr. Wilson was assaulted corrections officers on November 2 and that medical staff covered up his injuries. Mr. Wilson initiated Remedy No. 759141 on November 26, 2013, generally alleging that NPT Nehls refused to treat him after he sustained his injuries on November 2 and in the ensuing weeks. The specifics of these grievances are addressed in the following analysis.

## D. Procedural History

Proceeding without the assistance of counsel, Mr. Wilson commenced this action on March 3, 2014 (**# 4**), alleging two claims under the Eighth Amendment against various named staff and five unnamed defendants. The Defendants filed a Motion for Summary Judgment (**# 36**) on July 10, 2014, arguing that Mr. Wilson had failed to comply with administrative grievance procedures and therefore had not complied with the exhaustion requirements. Mr. Wilson filed a Motion to Withdraw Complaint (**# 39**) on July 15, 2014, implicitly conceding that he had not completed the Bureau of Prison's (BOP) grievance procedures. That motion was granted by the district court on July 21, 2014 and the case was dismissed without prejudice (**# 41**). Still *pro se*, Mr. Wilson filed a Motion to Vacate/Reinstate (**# 42**) on December 26, 2014. Although they were

not identified as distinct motions and identified with separate docket entries by the Clerk of Court, Mr. Wilson's submission also included a Motion for Appointment of Counsel, a Motion Demanding a Jury Trial, and a motion to amend his complaint.

On September 29, 2015, the Court granted the motion to reopen, but advised Mr. Wilson that he would be required to file new motions requesting appointment of counsel and leave to amend his complaint. Although he filed two separate motions for preliminary relief in October 2015, Mr. Wilson did not file a Motion to Amend (**# 55**) until December 7, 2015. That proposed amended complaint included all the original defendants, added five new defendants, and asserted two violations of the Eighth Amendment and a retaliation claim under the First Amendment. Counsel was appointed for Mr. Wilson in June 2016 (**# 74**).

## IV.    LEGAL STANDARD

### A.    Rule 12

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the complaint, any exhibits attached thereto, and any external documents that are incorporated by reference. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). However, a court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity. *Alvarado v. KOB-TV LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments in the complaint that are merely legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. The Court then takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a "plausible" as compared to a "conceivable" claim. *See: Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## B.    Rule 56

Because the Court considers matters outside the Second Amended Complaint to determine whether Mr. Wilson's disciplinary-hearing conviction bars his excessive-force claim and whether he exhausted his administrative remedies, the Court converts the standard of review for Claims 1, 3, 4, 5, and 6 to that of summary judgment. *See* Fed. R. Civ. P. 12(d).

Rule 56 facilitates the entry of a judgment only if no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to

the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## V. DISCUSSION

The Defendants seek summary judgment in their favor on Claims 1, 3, and 5, arguing that they are barred by the Supreme Court's decisions in *Heck v. Humphrey,* 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997). The Defendants also move for summary judgment in their favor on Claims 3, 4 (only as to Defendant Rogers), 5, and 6, based on Mr. Wilson's failure to comply with the Prison Litigation Reform Act's (PLRA) exhaustion requirement. Finally, the Defendants seek dismissal of claims against Defendants Hagans, Cullison, and Delgado because

they are barred by the applicable two-year statute of limitations. The Defendants also invoke qualified immunity as to multiple claims.

## A.    Claim 1 — Excessive Force Prior to Restraint

Claim 1 is an excessive-force claim based on the incident but before Mr. Wilson was restrained. The allegations in the Second Amended Complaint are that he was passive and did not resist officers during the incident. Thereafter, he was convicted on disciplinary charges of having assaulted the officers during the incident. The Defendants contend Claim 1 is completely barred by the Supreme Court's decisions in *Heck v. Humphrey,* 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997). They also argue that Defendants Klein and Swartz are entitled to qualified immunity.

### *1.*    **Heck v. Humphrey**

In *Heck*, the Supreme Court held that a § 1983 action seeking damages is not cognizable if a favorable decision would necessarily imply the invalidity of a valid conviction or sentence. 512 U.S. at 486–87. The Tenth Circuit applies this rule to *Bivens* claims brought by federal prisoners with regard to convictions made in disciplinary proceedings. *See, e.g*., *Reed v. Smith*, 182 F.3d 933 (10th Cir. 1999) (table decision).

An excessive-force claim is not necessarily inconsistent with a plaintiff's conviction for assaulting the officer who is alleged to have used excessive force. *Havens v. Johnson*, 783 F.3d 776, 782–83 (10th Cir. 2015). In such a circumstance, the Court must compare the plaintiff's allegations to the facts surrounding the incident to the facts necessary for disciplinary conviction. For the excessive force claim to be barred in its entirety, the facts necessary to prevail on the excessive-force claim must be inconsistent with the facts necessary to the disciplinary conviction. Stated another way — Mr. Wilson's claim excessive force claim is barred if the only way he can

prevail on it is upon a finding of facts that are inconsistent with his disciplinary conviction.

In his Second Amended Complaint, Mr. Wilson alleges that once the officers entered his cell, he immediately laid down on the floor and covered his head and face.   2d Am. Compl. ¶ 87. The team proceeded to attack him while making false statements like "stop fighting and resisting." 2d Am. Compl. ¶¶ 96, 99.   Mr. Wilson alleges that he was not aggressive throughout the assault, was solely trying to protect himself, and "did not bite, kick, punch, choke, threaten, or otherwise harm any person present."   2d Am. Compl. ¶ 112.

But in the disciplinary hearing hearing after the incident, Mr. Wilson was convicted of assaulting the officers.   The assaults specifically found were:

- When the use-of-force team entered Plaintiff's cell, Plaintiff punched the number 1 team member in the face.

- Plaintiff placed his arms beneath the number 1 staff member's helmet and choked him.

- Other team members had to pull Plaintiff off of the number 1 team member.

- Plaintiff punched, elbowed, bit, and kicked as many team members as he could until staff was able to gain control of him.

- During the use of force, Plaintiff knocked off a staff member's helmet and gas mask.

- Use-of-force team members received multiple injuries during the use of force, including a possible broken finger and bruising to the head and knee areas.

- Officer Morabito, the author of the incident report, was referred to a local hospital for head, arm, and neck injuries, along with bruising to his right eye area.

# 135-2 ¶ 20.   Mr. Wilson's disciplinary conviction has never been reversed or invalidated.

It is helpful to note that to prevail on his excessive-force claim, Mr. Wilson must prove two elements: (1) a use of force "objectively harmful enough to establish a constitutional violation", and (2) that "the officials acted with a sufficiently culpable state of mind."   *Serna v.*

*Colo. Dep't of Corr.*, 455 F.3d 1146, 1152 (10th Cir. 2006); *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir.2003). The first element examines the objective level of force applied in the particular factual context and in light of contemporary standards of decency; the second element turns on whether the force was applied "in a good-faith effort to maintain or restore discipline or malicious and sadistically for the very purpose of causing harm." *Smith*, 339 F.3d at 1212.

Whether Mr. Wilson assaulted the officers involved is not dispositive to his excessive-force claim. First, the disciplinary findings are limited to events that transpired after officers entered Mr. Wilson's cell. Thus, as to events that occurred before the officers entered his cell, the conviction is irrelevant. As to the events that occurred after the officers entered Mr. Wilson's cell, the findings of his assaultive conduct are relevant and inconsistent with some allegations in the Second Amended Complaint. However, it is not necessary for Mr. Wilson to establish that he was passive (or did not assault the officers) for him to prevail on his excessive-force claim. The determination of whether the force used was excessive is a calculus based upon what "is contextual and responsive to contemporary standards of decency." *Id*. Mr. Wilson's combative behavior changes the calculus but it is not *per se* inconsistent with his excessive-force claim. Put another way, it is possible that the force used by officers was excessive despite Mr. Wilson's resistance. Thus, the excessive-force claim is not necessarily factually inconsistent with the disciplinary determination. *Heck* does not bar this claim.

Because the disciplinary determination is inconsistent with some of Mr. Wilson's allegations in the Second Amended Complaint, the factual findings in the disciplinary determination control, both under *Heck* and consistent with the doctrine of collateral estoppel. *See, e.g.*, *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1127 (10th Cir. 1999). Thus, in pursuing his excessive-force claim, Mr. Wilson may not assert or present evidence of conduct at

odds with that found in the disciplinary proceeding; specifically evidence suggesting "he did nothing wrong, but was viciously attacked for no reason," which squarely challenges Officer Miedich's findings.   *See Havens*, 783 F.3d at 783 (quoting *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 657 (5th Cir. 2007)).

## 2. *Qualified Immunity*

Qualified immunity protects individual state actors from civil liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).   When a defendant asserts qualified immunity, the burden shifts to the plaintiff, who must: (1) show facts that "make out a violation of a constitutional right," and (2) establish that, at the time of the conduct at issue, it was clearly established under existing law that the defendant's conduct breached the constitutional right.   *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).   The Court may address these questions in whichever order is best suited to the case.   If the plaintiff fails to satisfy either prong of this inquiry, the Court "must grant the defendant qualified immunity."   *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).   However, if the plaintiff establishes the violation of a clearly established right, it becomes the defendant's burden to prove is no genuine issue of material fact and that she is entitled to judgment as a matter of law.   *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

For all practical purposes, the first question is indistinguishable from the inquiry that the Court would make in determining whether the Plaintiff has come forward with sufficient evidence to establish a *prima facie* claim in accordance with Rule 56.   The plaintiff must show sufficient evidence to demonstrate the existence of a cognizable claim.   The Court considers the evidence in the light most favorable to the plaintiff and assesses whether it is sufficient to demonstrate the

violation of a constitutional right.   *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The "clearly established" inquiry focuses on whether the contours of the constitutional right were so well-settled in the context of the particular circumstances, that a "reasonable official would have understood that what he is doing violates that right."   *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).   To satisfy this prong, the burden is on the plaintiff to point to Supreme Court or Tenth Circuit precedent (or the clear weight of other circuit courts) that recognizes an actionable constitutional violation in the circumstances presented.   *Schwartz v. Booker*, 702 F.3d 573, 587–88 (10th Cir. 2012); *see also Thomas*, 607 F.3d at 669 (plaintiff bears the burden of citing to requisite authority).   It is not necessary for the plaintiff to point to a case with identical facts, but he must identify some authority that considers the issue "not as a broad general proposition," but in a "particularized" sense — for example, it is not sufficient to ask whether it is "clearly established" that the Fourth Amendment prohibits the use of excessive force in effecting an arrest; rather, the court examines whether that constitutional principle has previously been found to prohibit particular conduct.   *See, e.g.*, *Brosseau v. Haugen*, 543 U.S. 194, 198–200 (2004).

The Defendants argue that the Second Amended Complaint does not contain allegations sufficient to show personal participation of Defendants Klein and Swartz prior to Mr. Wilson's restraint, or to show a basis for supervisory liability.

The Eighth Amendment prohibits prison officials from taking measures that inflict unnecessary and wanton pain and suffering upon prisoners.   *Whitley v. Albers*, 475 U.S. 312, 320 (1986).   The question of whether a violation occurred "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."   *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).   Additionally, a constitutional violation under *Bivens* must be traceable to a defendant's own individual actions.

*Iqbal*, 556 U.S. at 676. Thus, a plaintiff must generally "identify specific actions taken by particular defendants" to make out a viable claim. *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013). But because government officials may not be held liable for the constitutional violations committed by their subordinates under a theory of *respondeat superior*, a plaintiff may only succeed under a theory of supervisor liability by demonstrating: (1) "the defendant promulgated, created, implemented, or possessed responsibility for the continued operation of a policy" that (2) caused the constitutional violation and (3) she acted with the state of mind required to establish the violation. *Id*. at 1225. A plaintiff makes this showing by identifying the "specific policies over which particular defendants possessed responsibility and that led to the alleged constitutional violation." *Id*. at 1226. Where a supervisor did not personally participate in the alleged violation, a plaintiff must demonstrate the required causal connection by showing that the defendant "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Poolaw v. Marcantel*, 565 F.3d 721, 732–33 (10th Cir. 2009).

Defendants Klein and Swartz are not referenced in Claim 1 of the Second Amended Complaint; it broadly refers to "Defendants." Therefore, the Court must address Claim 1 against Defendants Klein and Swartz by distinguishing between specific factual allegations involving these two individuals and broad conclusory assertions contained in the operative pleading.

Defendant Klein is identified in three allegations: Defendant Litvan had been directed to take Plaintiff's property after "someone" called Defendant Klein (¶ 32); Defendant Klein ordered that Plaintiff's property be taken "at the direction of the 'new Warden,' John Oliver" (¶ 33); and "Defendant Klein ordered a use-of-force team to be sent to Mr. Wilson's cell" (¶ 35).

Defendant Swartz is mentioned in two factual allegations: that the use-of-force team "was

approved by Defendant Swartz" (¶ 36) and that Defendant Swartz "approved the use of all [the] weapons" employed by the use-of-force team (¶ 73). Both of these defendants are mentioned repeatedly in various paragraphs in Claims 5 and 6 that broadly assert constitutional violations predicated on their failure "to implement and enforce policies" that would have prevented the infringement of Plaintiff's constitutional rights under the Eighth Amendment. Notably, there are no allegations asserting that either Klein or Swartz was present at Mr. Wilson's cell on November 2, 2013, or later during his interactions with members of the medical department. There are no allegations suggesting that Defendants Klein and/or Swartz received copies of Plaintiff's medical records relating to the events surrounding the assault.

These allegations are either irrelevant to the Claim 1 or conclusory and devoid of factual enhancement. There is no cause of action related to any taking of Mr. Wilson's property, so the allegation that Defendant Klein ordered such taking is probative of nothing. The allegation that Defendant Klein ordered the use-of-force team to Mr. Wilson's cell is a conclusion without factual enhancement. Mr. Wilson does not endeavor to describe the how or why Defendant Klein ordered the team, much less anything that he ordered the team to do.[5] Mr. Wilson goes slightly further for Defendant Swartz in alleging that he approved of the weapons used. But this allegation, too, is conclusory because it makes no attempt to speak to Defendant Swartz's state of mind. In essence, these allegations are "speculative assumptions" insufficient to sustain an actionable claim. *See Lewis v. Tripp*, 604 F.3d 1221, 1230 (10th Cir. 2010). Thus, they do not suggest or support any inference that Defendants Klein or Swartz had any direct involvement in,

---

[5] Permitting subordinate officers to employ use-of-force techniques does not necessarily demonstrate that Defendants Klein or Swartz authorized those officers to violate Mr. Wilson's constitutional rights. The Court has some doubt that mere ordering of a use-of-force team, without specific orders relating to how the team should proceed and conduct itself, deprives anyone of their constitutional rights.

16

personal participation in, or supervisory role in the use of force before Mr. Wilson was restrained. Accordingly, Claim 1 must be dismissed as to Defendants Klein and Swartz.[6]

## B.    Claim 2 — Excessive Force After Restraint

Claim 2 is an excessive-force claim based on the incident but after Mr. Wilson was restrained by the Officers.   The allegations in the Second Amended Complaint are that Officers continued to beat him after he had been restrained.   All of the remaining Defendants invoke the doctrine of qualified immunity.   The Court incorporates the standards set forth as to Defendants Klein and Swartz in Claim 1.   The Defendants contend that Mr. Wilson's post-restraint allegations are insufficient to show the personal participation of most of the Defendants.

Again, personal participation is an essential element of a civil rights action.   It is imperative that a plaintiff clearly alleges who did what to whom rather than make collective allegations.   *Pahls*, 718 F.3d at 1225.   But the Tenth Circuit recognizes that, in cases where the qualified immunity defense is raised, a plaintiff is not required to include "all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).

Mr. Wilson identifies by name the members of the use-of-force team that entered Mr. Wilson's cell on November 2, 2013.   Defendants Delgado and Hagans are specifically referenced in the post-restraining allegations, Delgado for kneeing Mr. Wilson at least 11 times and Hagans for kneeing him in the jaw.   2d Am. Compl. ¶¶ 121, 127.   Other allegations state that one or more unidentified defendants punched him in the face, grabbed him by the testicles, cut off his clothes, dragged him along the ground, yanked him off the floor, and tried to grab his testicles a third time.

---

[6]   The Court is unwilling to grant further amendment of the allegations due to the protracted nature of this case.   The Court notes that Claim 2 will proceed against Defendants Klein and Swartz, as the Defendants made no argument on that claim.

2d Am. Compl. ¶¶ 120, 122–23, 126, 129.

In moving to dismiss Claim 2, the Defendants argue they are entitled to qualified immunity because Mr. Wilson's claim does not attribute specific actions to any named assailant or allege how a particular defendant used excessive force after Plaintiff was restrained in his cell.   Mr. Wilson responds that he is not required to correlate identify actions with individual officers because the Defendants' actions all relate to a single incident and all of the individual Defendants are alleged to have been present at that incident to have acted together.

The Court agrees with Mr. Wilson.   The Second Amended Complaint is not devoid of specificity — it is no mystery which officers were present and in a position to use excessive force. Though Mr. Wilson has not alleged which specific Defendant committed which specific punch or testicle grab, it would be unfair to require him to do so based on circumstances in which he was, at a minimum, disoriented from tear gas and physical injuries.   *See Bark v. Chacon*, No. 10-CV-1570, 2011 WL 1884691 at *5 (D. Colo. May 18, 2011).   Cases holding differently have done so on allegations much more attenuated than these.   For example, in *Moore v. Stadium Management Co.*, Judge Brimmer reasoned that the plaintiff offered no specific allegations that could be read together with general allegations of pertaining to all defendants.   No. 15-CV-0482, 2016 WL 879829 at *7 (D. Colo. Mar. 8, 2016).   But here, Mr. Wilson has specifically alleged who the individuals were that entered his cell and subdued him, which can be read together with his general allegations that he was struck and injured.   *See Mauchlin v. Davis*, No. 12-CV-1449, 2014 WL 5069547 at *6 (D. Colo. Oct. 9, 2014).   Though spread over multiple claims, Mr. Wilson alleges a single constitutional violation (excessive force) arising out of a single occurrence (November 2 use of force) and identifies each of the officers present for the violation.   There is nothing generic about these allegations.   Claim 2 will therefore proceed.

## C. Claims 3, 4, 5, and 6

Claim 3 alleges a deliberate indifference to Mr. Wilson's mental health needs before the assault and Claim 4 alleges a deliberate indifference to medical needs after the assault. Claim 5 alleges the creation of an environment where excessive force was likely to occur and Claim 6 alleges the creation of an environment where medical neglect was likely to occur. The Defendants argue that Mr. Wilson failed to exhaust his administrative remedies for all of these claims.

A failure to exhaust administrative remedies constitutes an affirmative defense which must be pleaded and proved by the defendant. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). The Defendants have submitted evidence that Mr. Wilson failed to properly complete the grievance process as to the claims in his original and subsequent pleadings. Therefore, the burden shifts to Mr. Wilson to show, by tendering competent evidence, that dismissal is not proper. If he fails to demonstrate with specificity the existence of a disputed material fact, the Defendants are entitled to dismissal of these claims. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).

### 1. *Exhaustion Under the PLRA and BOP Policy*

The PLRA specifically requires prisoners to exhaust administrative remedies for claims brought under federal law with respect to prison conditions. 42 U.S.C. § 1997e(a). It is well established that exhaustion is mandatory prior to bringing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007). The PLRA requires "proper exhaustion", which means the plaintiff must utilize all administrative remedies provided and must comply with the deadlines and other procedural rules prior to filing a lawsuit relating to the conditions of confinement. *Woodford v. Ngo*, 548 U.S. 81, 85, 90–91 (2006)). The PLRA imposes no specific procedural rules on the grievance process; rather, it is the prison's own grievance procedures that set forth what the prisoner must do in order

to exhaust his or her administrative remedies.  *Jones*, 549 U.S. at 218.  A prisoner need not identify every wrongdoer by name in his initial grievance, but he must provide enough information for prison officials to have a fair opportunity to investigate and resolve the complaint.  *Kikumura v. Osagie*, 461 F.3d 1269, 1284 (10th Cir. 2008), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

The BOP provides a four-tiered Administrative Remedy Program for inmate grievances. The first step requires a prisoner to present an issue of concern informally to prison staff.  28 C.F.R. § 542.13(a).  The prisoner has 20 days from the date of the incident to complete the informal resolution and file a formal Administrative Remedy Request, known as a BP-9.[7]  28 C.F.R. § 542.14(a).  The warden must respond within 20 days.  If dissatisfied with the warden's response, the prisoner may appeal to the Regional Director by filing a Regional Office Administrative Remedy Appeal, also known as a BP-10 request, within 20 days.  28 C.F.R. § 542.15(a).  The Regional Director must respond to the BP-10 within 30 days.  28 C.F.R. § 542.18.  Finally, if the prisoner is dissatisfied with the Regional Director's response, he may appeal to the Director of National Inmate Appeals by filing a Central Office Administrative Remedy Appeal, known as a BP-11, within 30 days.  28 C.F.R. § 542.15(a).  The Central Office Administrative Appeal must respond within 40 days.  28 C.F.R. § 542.18.  A prisoner has not exhausted his administrative remedies until he has properly and timely sought review at all three formal levels.  28 C.F.R. § 542.15(b)(2).

The Defendants contend that Mr. Wilson failed to properly exhaust his administrative remedies as to Claim 3 (deliberate indifferent to Plaintiff's mental health needs), Claim 5 (an

---

[7]   Section 542.14 states that an inmate must provide "all requested identifying information" and "state the complaint in the space provided on the [grievance] form."   However, the inmate is allowed to provide additional information on an additional letter-size "continuation page" and made also submit "one copy of supporting exhibits."   *See* 28 C.F.R. § 542.14(c)(3).

Eighth Amendment violation by creating an environment in which excessive physical force was likely to occur) and Claim 6 (an Eighth Amendment violation by creating an environment in which medical neglect was likely to occur).   The Defendants also argue that Mr. Wilson failed to properly comply with the BOP administrative grievance procedures as to Defendant Rogers in Claim 4 (deliberate indifference to medical needs).   In particular, the Defendants maintain that the grievances Mr. Wilson filed were too vague to allow prison officials a fair opportunity to resolve these matters internally, or failed to raise these alleged violations at all.   Mr. Wilson contends that the foregoing grievances satisfy the notice requirements under the PLRA, particularly when "coupled with the facts giving rise to" the alleged violations.   Plaintiff insists that his administrative grievances provided enough details to give prison officials notice of the problem in order to properly investigate.

### 2.   *Claims 3, 5, and 6*

Mr. Wilson cites Remedy No. 757664 as the exhausted basis for these claims.   In Remedy No. 757664, Mr. Wilson states:

> I was felony assaulted (beaten) by 6 corrections officers on 11-2-13 that damaged my face blacking both of my eyes, completely swelling my right eye shut.   I was kneed and punched in my face, skin torn from my left hand and arm by a metal object.   This isn't only a violation of B.O.P. Policy, it's a violation of my 5th, 8th and 14th amendment rights.   The Attorney General said (promised) that I would be protected from all acts of violence. B.O.P. staff do not have the right to savagely beat inmates.   I fear for my safety and well being. I have complain to staff here but no one seems to care.   Nothing has been done to penalize the officers that beat me black and bloody.   I am asking to be monetarily compensated for the injuries sustained to my person.   There are photos of my injuries.

# 135-1 at 34.   In an appeal of this grievance, Mr. Wilson adds:

> And I've been retaliated against numerous times with being threatened, having my personal property stolen and trashed, and was written a false code 224 that was sent to the local FBI for prosecution.   Also medical staff have doctored my medical records to not show my injuries, and I was denied proper medical treatment by NPT Nehls.   Furthermore, the Warden (John Oliver) has blatantly denied my remedy

when he personally seen my injuries.

# 135-1 at 38–39.

In Claim 3, Mr. Wilson alleges deliberate indifference to his Wilson's mental health needs by unspecified prison officials and staff who failed to respond to Mr. Wilson's serious mental health issues and unnecessarily antagonized a mentally disturbed and suicidal individual.   2d Am. Compl. ¶¶ 191–200.   This grievance does not refer to Mr. Wilson's alleged thoughts of suicide or specifically mention his mental health crisis.   Rather, it refers to an assault by six correctional officers.   Although Mr. Wilson expressed fear for his "safety and well being", that phrase must be construed in the context of the preceding alleged assault.   The single reference to safety does not signal severe mental distress or put prison officials on notice of Mr. Wilson's suicidal thoughts on or before November 2, 2013, because the grievance is one dimensional.   Had Mr. Wilson included any other remarks about mental health-related concerns, it could perhaps put prison officials on notice of such concerns, but it makes no reference to "severe mental distress," "thoughts of suicide," or any specific named defendant.   Indeed, his final appeal of Remedy No. 757664 does not reference his safety or well-being.   Because the grievance states instead that Mr. Wilson's fear was prompted by the alleged assault and the medical staff's actions in doctoring medical records, Mr. Wilson did not exhaust his remedies as to Claim 3.

Claims 5 alleges that Assistant Warden Swartz and Captain Klein, as supervising authorities, violated the Eighth Amendment "by failing to implement and enforce policies that would have prevented the use of excessive force against Mr. Wilson and would have prevented his resulting severe injuries."   2d Am. Compl. ¶ 211.   Claim 6 further asserts that Defendants Klein and Swartz violated the Eighth Amendment by "failing to implement and enforce policies that would have prevented deliberate indifference to Mr. Wilson's serious mental health and medical

needs." 2d Am. Compl. ¶ 219.   This grievance does not mention Assistant Warden Swartz or Captain Klein in any way, or suggest that either individual violated Plaintiff's constitutional rights. Though Mr. Wilson noted that nothing happened to the officers that beat him, this passage strikes at a failure to do anything in response to his specific assault incident, but does not put the BOP on notice that, before the assault, an environment was created that gave rise to excessive force used against Mr. Wilson.   Mr. Wilson thus did not exhaust his remedies for Claims 5 and 6.

### 3.   *Claim 4*

Mr. Wilson cites Remedy No. 759141 as the exhausted basis for Claim 4.   In Remedy No. 759141, Mr. Wilson states:

> This administrative remedy filing is against NPT Nehls.   This writer will outline the violation of this writers amendment rights.   This writer has complained to medical personnel NPT Nehls on many occasions verbally and in written form about pain in the left side of my jaw and not being able to fully open my mouth and properly chew my food.   NPT Nehls has denied this writer pain medication every time I've asked for it.   NPT Nehls has also refused to pull this writer out of his cell to "properly" examine my jaw or have x-rays taken to check for a fracture.   I was badly injured on November 2, 2013 by a use of force team that used extreme excessive use of force on me.   NPT Nehls has violated my 8th amendment right which states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."   NPT Nehls has violated my 8th amendment right by willingly refusing to properly treat or have treated my injuries and allowing this writer to suffer through pains in my jaw that wakes me up out of my sleep at night and keeps my eating to a bare minimum.   This non-treatment of my injuries is also labled as medical negligence by NPT Nehls.   NPT Nehls is in further violation of Federal Law which guarantees proper adequate medical treatment of injuries that inmates sustains.   Please reference check Bureau of Prisons Policy about health services.   This writer has filed on NPT Nehls before about refusing this writer medical treatment, and those filings has somehow disappeared from the record.   This is tampering with the Administrative Remedy Program, which is a felony under Federal Law.   I request to be properly medical treated for my pain and injuries.   I also want NPT Nehls fired and not given the option to leave.   Furthermore, this writer would like to know why am I just being placed on sick call on 11-12-13.   I have complained to medical team from 11-2-13 all the way to 11-18-13.   I have written requests with responses from NPT Nehls stating she was not going to give me pain meds.   This writer has been on the sick call list since July 16, 2013 from another staff assault and still has not been seen yet for that.   NPT Nehls has not done her own job (sick call) because she keeps doing

> "pill line" when other medical staff can do "pill line," so NPT Nehls can see people that's on the sick call" list that's almost booked up for an entire year. There is no excuse for the "sick call" list being backed up like this.

# 135-1 at 47–48. His subsequent appeals were not materially different.

Claim 4 alleges, in part, that Defendant Rogers "witnessed" the injuries sustained by Mr. Wilson on November 2, 2013, but "chose not to document all of his injuries in order to cover up for his coworkers, and did not treat many of his injuries at all." 2d Am. Compl. ¶ 205. As a result of Defendant Roger's actions, Plaintiff was "in serious pain for days, while he complained of extreme headaches, pain in his jaw, wrists, and ankles, and nosebleeds." 2d Am. Compl. ¶ 206.

There is no specific mention of Defendant Rogers and no allegation that Defendant Rogers refused to provide medical treatment on or after November 2. Although a prisoner is not required to name all defendants in a grievance, much of this grievance describes specific, personal conduct on the part of NPT Nehls and not conduct that could be fairly attributed to random medical staff members. For example, Mr. Wilson's BP-9 states that NPT Nehls willingly refused to treat his injuries and that he directed complaints of jaw pain to NPT Nehls. On each occasion, NPT Nehls denied requests for pain medication and refused to examine Mr. Wilson's jaw. Nowhere does Mr. Wilson generically refer to "medical staff" or "personnel" except in connection with identifying NPT Nehls. Having filed an internal complaint specifically directed against NPT Nehls for actions and omissions specifically attributed to that particular individual, Mr. Wilson cannot now broadly construe his grievances to encompass Defendant Rogers.

Mr. Wilson contends that, regardless of the content of his grievances, BOP officials were aware of multiple staff members in their investigation, as evidenced by the BOP referring to "Health services staff" in its responses to Remedy No. 759141 and its appeals. Where the use of this generic term would open Mr. Wilson's grievance to more potential defendants, the BOP's use

does not give rise to an inference that it investigated Mr. Wilson's allegations as against both NPT Nehls and Defendant Rogers. Mr. Wilson provides the prompt and the BOP states what it did. Inferences can be drawn from the prompt but not the description of the investigation. Therefore, Mr. Wilson did not exhaust his remedies as to Defendant Rogers on Claim 4.

Accordingly, the court will dismiss without prejudice Claims 3, 5, and 6 in their entirety, and Claim 4 as to Defendant Rogers.

## D. Statute of Limitations as to Claims 1, 2, and 3 Against Defendants Hagans, Cullison, Delgado, and Terska

"A *Bivens* action is subject to the limitation period for an action under 42 U.S.C. § 1983, and that limitation period is set by the personal injury statute in the state where the cause of action accrues." *Roberts v. Barreras*, 484 F.3d 1236, 1238 (10th Cir. 2007). In Colorado, the limitation on personal injury claims is two years. *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993); *see* C.R.S. § 13–80–102(1)(a), (g) & (i). Although state law establishes the statute of limitations, federal law governs when a *Bivens* claim accrues. *Van Tu v. Koster*, 364 F.3d 1196, 1199 (10th Cir. 2004). "Under federal law, the statute of limitations on a *Bivens* claim begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id.* "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Indus. Const'rs Corp. v. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). A plaintiff need not know all the evidence ultimately relied on for the cause of action to accrue. *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993). It is undisputed that Mr. Wilson knew of his excessive force claim as of November 2, 2013. It necessarily follows that his limitations period closed on November 2, 2015, which would preclude claims against Defendants Hagans, Cullison, Delgado and Terska unless Plaintiff can properly claim equitable tolling.

The issue of tolling, like the statute of limitations, is governed by Colorado law. *Garrett v. Fleming*, 362 F.3d 692, 697 (10th Cir. 2004). "Once the statute of limitations is raised as an affirmative defense, the burden shifts to the plaintiff to show that the statute has been tolled." *Overheiser v. Safeway Stores Inc.*, 814 P.2d 12, 13 (Colo. App. 1991). Under Colorado law, equitable tolling may be appropriate where "truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Braxton v. Zavaras*, 614 F.3d 1156, 1161 (10th Cir. 2010) (quoting *Dean Witter Reynolds Inc. v. Hartman*, 911 P.2d 1094, 1099 (Colo. 1996)).

Mr. Wilson filed this suit on March 3, 2014. Though his original complaint did not include Defendants Hagans, Cullison, Delgado or Terska as defendants, he did include "four unknown officers" as defendants. Prompted by the Defendants' first motion for summary judgment, Mr. Wilson sought to withdraw his complaint to exhaust his administrative remedies in July 2014 (**# 39**). The Court granted that motion (**# 41**). In December 2014, Mr. Wilson filed a Motion to Vacate/Reinstate (**# 42**) on December 26, 2014, asking to reinstate his earlier case because he had completed the administrative grievance process. Mr. Wilson attached a Motion to Amend Complaint, which was dated December 17, 2014, and included allegations against Officers Hagans, Cullison, Delgado, and Terska. # 42 at 44. The Court did not rule on this motion until September 29, 2015, and when it did, it stated that it was unclear whether the Defendants were aware of the additional motions attached to the motion to vacate, including the motion to amend. Thus, the Court denied those motions with leave to file them separately and anew. Mr. Wilson followed this order with a number of filings, but did not file a motion to amend his complaint until Magistrate Judge Shaffer prompted him to at a status conference in November. The proposed pleading filed on December 2015 did not depart in any substantive way from the December 2014

submission. Mr. Wilson insists that the applicable statute of limitations were tolled during the pendency of his administrative grievances and that his first attempt to amend his pleading effectively tolled the statute of limitation pending a decision by the Court.

Mr. Wilson's request for equitable tolling is warranted. Although the delay between the Court's September 2015 order and his December filing of the motion to amend his complaint is not insignificant, Mr. Wilson was a *pro se* party at the time. Far more significant is the Court's 9-month delay in ruling on his motion to reopen the case, which occurred through no fault of Mr. Wilson's. He should not be penalized for circumstances beyond his control, as he did make a good-faith effort to exhaust his remedies and reopen this case when that process was completed. *See Dean Witter*, 911 P.2d at 1094. The Court therefore exercises its equitable authority to toll the statute of limitations for the nine months Mr. Wilson's motion was pending. As a result, his Motion to Amend Complaint (**# 55**) easily falls within the statute of limitations. Dismissal is denied on this ground.

## VI. CONCLUSION

For the foregoing reasons, the Defendants' Motions (**# 135**, **137**) are **GRANTED IN PART** and **DENIED IN PART**. Claim 1 is **DISMISSED WITH PREJUDICE** against Defendants Klein and Swartz. Also with regard to Claim 1, Mr. Wilson is estopped from asserting or presenting evidence inconsistent with the findings made by the disciplinary hearing as to his conduct in the subject incident. The following claims are **DISMISSED WITHOUT PREJUDICE**: Claim 4 as to Defendant Rogers; and Claims 3, 5, and 6. The motions are **DENIED** in all other respects. The following claims will proceed: Claim 1 subject to the foregoing order, Claim 2, and Claim 4 against Defendant Nehls.

The Defendants' prior Motion to Dismiss (**# 128**) is **DENIED AS MOOT**. The caption

shall be amended to reflect the dismissal of claims against Defendants Rogers, Klein, and Swartz.

Dated this 13th day of March, 2018.

BY THE COURT:

Marcia S. Krieger
Chief United States District Judge